FILED
MAR 5 2019
Clerk, U S District Court
District Of Montana
Billings

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>JOSHUA ABRAM DISKIN,<br><br>Defendant. | CR 17-60-BLG-SPW<br><br>ORDER |

Before the Court is Defendant Joshua Abram Diskin's motion to suppress evidence seized from a vehicle in which he was a passenger. (Doc. 37). For the following reasons, Diskin's motion is denied.

## I. Facts

On October 13, 2016, Detective Ken Tuss, a twenty-year veteran with the Billings Police Department assigned to the Eastern Montana High Intensity Drug Trafficking Area task force, was working a normal shift when he and a fellow detective were contacted by a person offering information on drug activity around the Billings area. The person was unknown to Detective Tuss, so he and Drug Enforcement Administration special agent Mike Zidack went to city hall to meet

1

him/her. After some discussion about the person's criminal history, which included recent criminal charges for drug possession and paraphernalia and a possible connection to a theft, the person completed a confidential informant packet and became Detective Tuss's confidential informant. The confidential informant told Detective Tuss that he/she may pick up someone named Josh in Butte the next morning who was trafficking a half pound of methamphetamine from California by bus transit. Detective Tuss told the confidential informant to contact him if that happened.

Early the next morning, Detective Tuss received a text from the confidential informant stating he/she had just picked up Josh in Butte and the two were traveling back to Billings. The confidential informant texted pictures of the car he/she was driving and its license plate. Detective Tuss ran the car's plate, which showed the two were traveling in a 2002 Volkswagen Passat with expired plates. A short time later, the confidential informant texted Detective Tuss that Josh had a little less than a half pound of methamphetamine in the car. Detective Tuss and the confidential informant continued to exchange texts until suddenly they stopped. At that point, Detective Tuss set up an operational meeting with members of the drug task force and briefed them on the confidential informant's tips.

At the meeting with Detective Tuss was another Billings Police detective, a detective with the Yellowstone County Sheriff's office, a Billings Police sergeant,

and Special Agent Zidack. Detective Tuss developed a plan to station members of the drug task force at various points on the highway to intercept and pull over the vehicle. Yellowstone County Sheriff's Deputy Aaron Harris happened to be in the building during the operational meeting, and the drug task force asked if he would assist. Deputy Harris was briefed on the situation, given a picture of the vehicle and the license plate, and instructed to remain near the Billings/Laurel area in his marked squad car. The drug task force also briefed Robert Vickery, a Billings Police Officer assigned to the K9 unit, on the situation and asked that he standby. The confidential informant was not told the team's plan.

The team, in unmarked cars, spotted the confidential informant's vehicle traveling along the interstate and verified the license plate matched. The vehicle exited the interstate near Laurel. To protect the confidential informant, Detective Tuss radioed Deputy Harris, told him of the vehicle's location, and directed him to pull the vehicle over under the pretense of a traffic stop for expired plates. At the same time, Detective Tuss prepared an affidavit in anticipation of a search warrant and relayed the affidavit to K9 Officer Vickery.

Deputy Harris spotted the vehicle and pulled it over. Because of a narrow shoulder, Deputy Harris approached the vehicle from the passenger's side, stated he pulled them over for expired plates, and asked for license, registration, and insurance. While the confidential informant was gathering the documents, Deputy

3

Harris asked the passenger for identification. The passenger stated he didn't have identification but provided a date of birth and the name Jason Thomas. Deputy Harris requested the confidential informant to accompany him back to his squad car while he ran their information and wrote the ticket. The confidential informant still had no idea Deputy Harris knew about the prior tips or that Deputy Harris was operating at Detective Tuss's direction. The confidential informant told Deputy Harris the passenger was his/her relative and was in town because of their grandmother's heart attack.

When Deputy Harris ran a records check on them, he was unable to find any information for the passenger. Deputy Harris radioed K9 Officer Vickery and requested assistance. While waiting for K9 Officer Vickery, Deputy Harris walked back to the vehicle and spoke with the passenger. The passenger told Deputy Harris he was in town visiting friends. Deputy Harris again asked the passenger for identifying information and the passenger provided the same date of birth and name as previously. Deputy Harris explained he couldn't find any information under the given name and date of birth and asked the passenger to step out of the vehicle. The passenger became uncooperative and Deputy Harris ordered him to exit the vehicle. At that point, K9 Officer Vickery and another patrol deputy arrived. The passenger was placed in the patrol deputy's car.

Deputy Harris and K9 Officer Vickery discussed the situation and decided K9 Officer Vickery should deploy his dog. Approximately 30 minutes had elapsed since Deputy Harris stopped the vehicle. While K9 Officer Vickery deployed his dog, Deputy Harris called the drug task force and informed them of the latest developments. The drug task force stated they were on their way. When K9 Officer Vickery's dog alerted on the vehicle, he told Deputy Harris he would apply for a search warrant. Based on the confidential informant's tips, the inability to identify the passenger, the mismatched stories, and the dog alert, K9 Officer Vickery applied for and was granted a telephonic warrant by a state judge. The drug task force searched the vehicle pursuant to the warrant and uncovered 190 grams of methamphetamine. The passenger was arrested and later booked into Yellowstone County jail, where he was identified as Joshua Abram Diskin.

Other facts are included where necessary below.

## II. Standard of review

On a motion to suppress, the Ninth Circuit reviews legal conclusions de novo and factual findings for clear error. *United States v. Basher*, 629 F.3d 1161, 1167 (9th Cir. 2011).

## III. Discussion

Diskin makes five arguments in support of suppression: (1) the stop was unconstitutionally prolonged beyond the scope of issuing a traffic citation; (2) K9

Officer Vickery failed to comply with Federal Rule of Criminal Procedure 4.1 when he applied for the telephonic search warrant; (3) K9 Officer Vickery made intentional or reckless misstatements or omissions of material facts from the search warrant application; (4) Deputy Harris failed to preserve audio evidence at the scene; and (5) K9 Officer Vickery's dog sniff procedure was unreliable.

### A. The stop was not unconstitutionally prolonged because Deputy Harris had reasonable suspicion Diskin was trafficking methamphetamine based on the confidential informant's tips

The Fourth Amendment permits brief investigative stops when a law enforcement officer has "a particularized and objective basis for suspecting the particular person stopped of criminal activity." *Navarette v. California*, 134 S.Ct. 1683, 1687 (2014) (citing *Terry v. Ohio*, 392 U.S. 1, 21-22 (1968)). The reasonable suspicion necessary to justify an investigative stop is dependent upon both the content of information possessed by police and its degree of reliability. *Navarette*, 134 S.Ct. at 1687 (citing *Alabama v. White*, 496 U.S. 325, 330 (1990)).

Reasonable suspicion need not be based solely on an officer's personal observation; the officer may rely on information supplied by another person. *Navarette*, 134 S.Ct. at 1688 (citing *Adams v. Williams*, 407 U.S. 143, 147 (1972)). But information supplied by an informant must have sufficient indicia of reliability before it can contribute to an officer's reasonable suspicion. *Navarette*, 134 S.Ct. at 1688. Multiple factors bear on the reliability of information supplied by an

informant. *See White*, 496 U.S. 325 (independent police corroboration of information); *Florida v. J.L.*, 529 U.S. 266 (2000) (anonymity of informant); *United States v. Terry-Crespo*, 356 F.3d 1170, 1176 (9th Cir. 2004) (exigent circumstances); *Terry-Crespo*, 356 F.3d at 1176-1177 (whether informant's knowledge was first-hand or second-hand); *Terry-Crespo*, 356 F.3d at 1177 (whether informant's report was contemporaneous with suspected criminal activity). In determining reasonable suspicion, the Court must consider all of the information under the totality of the circumstances. *Navarette*, 134 S.Ct. at 1687.

If a person is stopped for violating the traffic code, the stop may not be prolonged beyond the time reasonably required to complete the mission of the stop. *Rodriguez v. United States*, 135 S.Ct. 1609, 1614 (2015) (citing *Illinois v. Caballes*, 543 U.S. 405, 407 (2005)). Because addressing the infraction is the purpose of the stop, it may "last no longer than is necessary to effectuate that purpose." *Rodriguez*, 135 S.Ct. at 1614. Authority for the stop ends when tasks tied to the traffic infraction are, or reasonably should have been, completed. *Rodriguez*, 135 S.Ct. at 1614. Such tasks typically include checking the driver's license, determining whether there are outstanding warrants against the driver, and inspecting the automobile's registration and proof of insurance. *Rodriguez*, 135 S.Ct. at 1615. In addition, passengers may be ordered to exit the vehicle, asked to produce ID, and questioned about travel.

*United States v. Betancourt*, 277 Fed.Appx.708 (9th Cir. 2008); *United States v. Williams*, 419 F.3d 1029, 1031 (9th Cir. 2005).

Diskin contends Deputy Harris stopped the vehicle to issue a ticket for expired plates and unconstitutionally prolonged the stop beyond that purpose. Diskin is incorrect because the stop does not even implicate a *Rodriguez* analysis.

The given reason for the stop, an expired license plate, was clearly a ruse to protect the confidential informant. The real reason for the stop was Detective Tuss and his drug task force suspected the passenger of trafficking methamphetamine from California. Their suspicion was based on information supplied by the confidential informant. On October 13, the confidential informant told Detective Tuss he/she may be picking up someone named Josh in Butte the next morning who was trafficking a half pound of methamphetamine from California by bus transit. Early the next day, the confidential informant confirmed that he/she had picked up Josh in Butte and the two were traveling back to Billings. The confidential informant texted pictures of the car he/she was driving and its license plate. Detective Tuss ran the car's plate, which showed the two were traveling in a 2002 Volkswagen Passat. The confidential informant then texted Detective Tuss that Josh had a little less than a half pound of methamphetamine in the car. Detective Tuss and the drug task force staked out the interstate, spotted the confidential informant's vehicle, and verified the license plate matched. Most or all of this information was directly

8

communicated to every officer involved in the investigation, including Deputy Harris. Furthermore, because the officers were working in concert, they were each imputed with the information under the collective knowledge doctrine. *United States v. Villasenor*, 608 F.3d 467, 475-476 (9th Cir. 2010).

The confidential informant's tips bear several indicia of reliability: the confidential informant was not anonymous, his/her information was first-hand, he/she contemporaneously reported the crime as it occurred, and he/she gave predictive information that the drug task force corroborated. Under the totality of the circumstances, the Court holds the confidential informant was reliable and his/her tips provided the drug task force with reasonable suspicion that the vehicle contained methamphetamine. Pursuant to that reasonable suspicion, Deputy Harris and the drug task force were authorized to stop the vehicle and its occupants to conduct a drug investigation, including the use of a drug dog. The use of the drug dog therefore did not, and could not, have unreasonably prolonged the stop beyond its initial purpose because the very purpose of the stop was to conduct a drug investigation. Diskin's challenge to the stop is denied.

### B. The requirements of Federal Rule of Criminal Procedure 4.1 were met

The requirements of Rule 4.1 are invoked by searches that are "federal in character," not by a state officer's application for a search warrant from a state judge for violations of state law. *United States v. Crawford*, 657 F.2d 1041, 1046

9

(9th Cir. 1981). Whether a search is "federal in character" is a factual inquiry. *U.S. v. Palmer*, 3 F.3d 300, 303 (9th Cir. 1993). Generally, a search is federal if from the beginning it was assumed a federal prosecution would result. *Palmer*, 3 F.3d at 303. A federal officer's "mere participation" in a search does not make it a federal one. *Palmer*, 3 F.3d at 303.

Here, every officer but one belonged to a local, county, or state law enforcement unit, and the search warrant application was drafted and submitted solely by local officers. On the other hand, Special Agent Zidack was involved from the beginning, and most of the officers involved were operating as members of the drug task force, a collaboration of local, county, state, and federal agencies to combat drug trafficking. In an abundance of caution, the Court assumes without deciding that the search was "federal in character." *See United States v. Villalba*, 217 Fed.Appx. 675 (9th Cir. 2007) (search conducted by local police as part of federal narcotics task force was "federal in character.").

Nonetheless, Diskin cannot show a Rule 4.1 violation warranting suppression. Diskin argues the telephonic search warrant was requested out of convenience rather than necessity. However, Rule 4.1(c) states absent bad faith, evidence obtained via telephonic warrant is not subject to suppression on the ground it was unreasonable to obtain a warrant telephonically. The testimony

established K9 Officer Vickery did not act in bad faith when he obtained the warrant telephonically.

Additionally, Diskin argues Rule 4.1(b) was violated because K9 Officer Vickery was not sworn and no recording or transcript was filed. The record shows K9 Officer Vickey was sworn and a recording was filed. (Docs. 71; 107). The state judge's voice is somewhat obscured but K9 Officer Vickey clearly says "I do." Furthermore, the filed written application states K9 Officer Vickery was sworn. (Doc. 62 at 1). The record does not contain a transcript of the recording. But a violation of Rule 4.1(b) merits suppression only when (1) the violation is of a constitutional magnitude; (2) the defendant is prejudiced because the search would not have taken place or would not have been as intrusive; or (3) there is evidence of an intentional and deliberate or reckless disregard for the rule. *United States v. Vasser*, 648 F.2d 507, 510-511 (9th Cir. 1980). The failure to file a transcript is not of constitutional magnitude, particularly when an audio recording exists. Diskin suffered no prejudice because the failure to file a transcript was not crucial to the search taking place. Finally, the failure to file a transcript was not due to an intentional or reckless disregard for the rule. Diskin's challenge to the noncompliance with Rule 4.1 is denied.

### C. Diskin failed to show Officer Vickery intentionally or recklessly lied or omitted material information from the search warrant application

11

In his brief, Diskin argued K9 Officer Vickery may have misled the state judge in his warrant application, but neither specified what misstatements or omissions K9 Officer Vickery made nor requested post hearing briefing to clarify. Nonetheless, based on his testimony, the Court finds K9 Officer Vickery did not make any intentional or reckless misstatements or omissions that affected the state judge's probable cause determination. Diskin's *Franks* challenge is denied.

### D. Diskin failed to show the lack of audio during portions of the stop was the result of bad faith

To obtain relief for the government's destruction of evidence, a defendant must show (1) evidence was lost or destroyed; (2) the evidence was potentially exculpatory; (3) the destruction was done in bad faith; and (4) the defendant has no alternative means of proving his point. *United States v. Sivilla*, 714 F.3d 1168, 1172 (9th Cir. 2013) (citing *Arizona v. Youngblood*, 488 U.S. 51, 56-57 (1988)).

In his brief, Diskin argued the officers may have lost or failed to preserve audio from the stop. Diskin did not develop a record on this claim, and the Court notes the majority of the stop video contained audio. Diskin's challenge to the missing audio is denied.

### E. K9 Officer Vickery's dog sniff procedure was reliable

Diskin's argument regarding the dog sniff is unclear. In his brief, Diskin stated he was consulting a drug dog expert and would present testimony on the dog sniff. Diskin neither stated specifically what he was challenging, nor did he

12

request post hearing briefing to clarify. He did present expert testimony that the dog sniff procedure employed by K9 Officer Vickery was problematic, so the Court presumes he is challenging K9 Officer Vickery's dog sniff procedure.

K9 Officer Vickery has been a K9 Officer for fourteen years. At the time of this search, he and his dog had worked together for six years. K9 Officer Vickery testified at length to his and his dog's training and annual certification through the North American Police Work Dog Association. When deploying his dog, K9 Officer Vickery testified he is trained to recognize two different mannerisms called an alert and an indicator. An alert is the physical manifestation of the reaction his dog has when it first encounters the odors he is trained to detect, such as a change in body posture or rapid respirations. An indicator is the trained response his dog has, such as sitting, when it wants to communicate to K9 Officer Vickery that it detects drugs. In essence, an alert is something K9 Officer Vickery is trained to recognize in his dog, whereas an indicator is something his dog is trained to communicate to him. K9 Officer Vickery testified his dog alerted on the vehicle with deep rapid respirations, but did not indicate.

Diskin's expert stated K9 Officer Vickery's training was wrong and unreliable, because there is no such thing as an alert. The expert stated a change in body posture or rapid breathing is something a dog does when it's actively

13

searching for anything, not just drugs. The expert stated an indicator is the only reliable way to determine whether a drug dog detects drugs.

The reliability of a drug dog or a particular dog sniff is determined under the flexible totality of the circumstances test. *Florida v. Harris*, 568 U.S. 237, 247 (2013). Evidence from a trained and reliable handler about alert behavior he recognizes in his dog can alone establish probable cause. *United States v. Thomas*, 726 F.3d 1086, 1098 (9th Cir. 2013).

The Court has considered the testimony of K9 Officer Vickery and Diskin's expert and holds the dog sniff procedure was reliable. K9 Officer Vickery and his dog were experienced in the field of narcotics detection, received annual certification, and did not have a poor record of false positives. Moreover, the Ninth Circuit has rejected the contention that alert behavior is inherently unreliable. *Thomas*, 726 F.3d at 1098 (citing *United States v. Parada*, 577 F.3d 1275, 1281-1282 (10th Cir. 2013) (upholding as sufficient the dog's rapid deep breathing, body stiffening, and breaking from the search pattern . . . around the vehicle.")). Diskin's challenge to the dog sniff procedure is denied.

## IV. Conclusion

Diskin's motion to suppress (Doc. 37) is denied.

DATED this 4th day of March, 2019.

*Susan P. Watters*
SUSAN P. WATTERS
United States District Judge